UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ROGERS, et al.,<br>Plaintiffs,<br>v.<br>ANMARIE SWANSTROM, et al.,<br>Defendants. | Case No. 2:24-cv-02587-TLN-CSK (PS)<br><br>FINDINGS AND RECOMMENDATIONS<br>(ECF No. 73) |

Pending before the Court is Defendants Claude Belongia, Anmarie Swanstrom, and Mike Miller's motion to dismiss Plaintiffs Anthony Rogers, Roberto Romero, and Devin Nanez's Third Amended Complaint ("TAC").[1] (ECF No. 73.) Plaintiffs are appearing without counsel. Pursuant to Local Rule 230(g), the Court submits the motion upon the record and briefs on file.

For the reasons that follow, the Court recommends GRANTING IN PART and DENYING IN PART Defendants' motion to dismiss.

/ / /

/ / /

/ / /

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

# I. BACKGROUND

## A. Factual Allegations[2]

Plaintiff Rogers is a parent of S.N., and Plaintiff Romero is a parent of T.R.[3] TAC ¶¶ 3-4 (ECF No. 72). At the time of the events alleged in the TAC, S.N., T.R., and Plaintiff Nanez were minors attending schools in the Mountain Valley Unified School District ("MVUSD"). *Id.* ¶¶ 3-5. The TAC alleges that MVUSD installed and operated "FlySense" vaping-detection devices in school restrooms and common areas. *Id.* ¶ 9. FlySense devices issue alerts based on detected changes in air quality. *Id.* ¶¶ 9-10.

Plaintiffs allege that on March 25, 2024, S.N. and T.R. were suspended from Hayfork Elementary School after triggering a FlySense alert (the "March 25, 2024 incident"). *Id.* ¶ 15. According to S.N. and T.R., they had only sprayed perfume. *Id.* The following day, Plaintiffs Rogers and Romero met with Defendant Belongia, the principal of Hayfork Elementary School, to challenge the constitutionality of the suspensions. *Id.* ¶¶ 7, 16. Plaintiffs allege that, when asked why Defendant Belongia had not investigated other girls who had contemporaneously exited the restroom from which the alert originated, Defendant Belongia answered, "What, the white girls? No, it wasn't them." *Id.* ¶ 19. Plaintiffs allege that Defendant Belongia also told Rogers and Romero that if they continued questioning him, S.N. would be deprived "of 'all sports and her Student Body President position.'" *Id.* ¶ 21.

The same day, March 26, 2024, Plaintiffs met with Defendant Swanstrom, the superintendent of MVUSD and principal of Hayfork High School. *Id.* ¶¶ 22-23. Plaintiffs allege Defendant Swanstrom justified the summary suspension based on the FlySense

---

[2] These facts primarily derive from the TAC (ECF No. 72), which are construed in the light most favorable to Plaintiff as the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not assume the truth of any conclusory factual allegations or legal conclusions. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

[3] Minors S.N. and T.R., and claims brought on their behalf, were previously dismissed without prejudice by the Court on November 7, 2025. *See* 11/7/2025 Order & F&Rs (ECF No. 46).

alert and video recording of S.N. and T.R. exiting the restroom shortly after that alert. *Id.* ¶ 24. Defendant Swanstrom also suggested testing the FlySense device's accuracy by spraying perfume near it, which was performed by an IT employee for MVUSD and resulted in a false-positive alert. *Id.* ¶¶ 26-27. The suspensions of S.N. and T.R. were later reversed. *Id.* ¶ 29.

On June 28, 2024, Plaintiffs Rogers and Romero filed written complaints with MVUSD and the MVUSD Board of Trustees regarding the constitutionality of school officials' reliance on FlySense devices. *Id.* ¶¶ 35-36. On July 24, 2024, Plaintiffs Rogers and Romero also submitted a UCP complaint to Defendant Swanstrom regarding Defendant Belongia's allegedly retaliatory statements on March 26, 2024, but Plaintiffs allege no corrective action against Defendant Belongia was taken. *Id.* ¶¶ 37-38.

Plaintiffs allege that on February 12, 2025, Plaintiff Nanez and another boy jumped and slapped a FlySense device in a Hayfork High School restroom, causing the device to issue an alert (the "February 12, 2025 incident"). *Id.* ¶ 54. Plaintiffs allege Defendants Swanstrom and Miller, the Dean of Students at Hayfork High School, arrived outside the restroom, escorted Plaintiff Nanez and the other boys in the restroom to another area, and ordered the students to empty their pockets, overriding Plaintiff Nanez's objection that "you can't search me." *Id.* ¶¶ 8, 55-60. Plaintiffs allege that the enforcement of FlySense alerts was not applied neutrally with regard to race as Nanez is Native American and Hispanic/Latino, and that Nanez has observed FlySense alerts do not always prompt investigation from school officials. *Id.* ¶¶ 64-66, 68.

**B. Procedural Posture**

Plaintiffs filed their Complaint on September 25, 2024. (ECF No. 1.) On June 12, 2025, Plaintiffs filed a First Amended Complaint. (ECF No. 7.) On July 11, 2025, the Court granted Plaintiffs' motion for leave to file a Second Amended Complaint ("SAC") (ECF No. 14) and ordered Plaintiffs to file a signed copy of the SAC filed at ECF No. 17. 7/11/2025 Order (ECF No. 24). On November 7, 2025, the Court issued an Order and Findings and Recommendations dismissing minor Plaintiffs S.N. and T.R. and claims

brought on their behalf without prejudice, and recommended that Soter Technologies' motion to dismiss be granted and Soter Technologies be dismissed with prejudice. See 11/7/2025 Order and F&Rs. On March 31, 2026, the district court adopted in full the November 6, 2025 F&Rs and dismissed Soter Technologies with prejudice from this action. 3/31/2026 Order (ECF No. 67).

On April 3, 2026, the Court issued an Order and Findings and Recommendations recommending that Defendants MVUSD and MVUSD Board of Education's motion to dismiss the SAC (ECF No. 41) be granted without leave to amend and that Defendants Belongia, Swanstrom, and Miller's motion to dismiss the SAC (ECF No. 42) be granted without leave to amend. 4/3/2026 Order and F&Rs (ECF No. 68). On May 19, 2026, the Court adopted the Findings and Recommendations in part, granting Defendants MVUSD and MVUSD Board of Education's motion to dismiss without leave to amend and granting Defendants Belongia, Swanstrom, and Miller's motion to dismiss with leave to amend only the First, Second, and Third Causes of Action against these defendants in their individual capacities. 5/19/2026 Order (ECF No. 71).

On May 28, 2026, pursuant to the district court's May 19, 2026 Order, Plaintiffs filed the Third Amended Complaint. TAC. Defendants Belongia, Miller, and Swanstrom filed a motion to dismiss on June 15, 2026. (ECF No. 73.) Plaintiffs filed an opposition on July 6, 2026. Pls. Opp'n (ECF No. 76). Defendants replied on July 9, 2026. Defs. Reply (ECF No. 78). Plaintiffs filed a response to Defendants' reply on July 20, 2026. (ECF No. 79.) Briefing is now complete.

## II. LEGAL STANDARDS

### A. Rule 8, Pro Se Pleadings, Construction and Amendment

Pro se pleadings are to be liberally construed and afforded the benefit of any doubt. *Chambers v. Herrera*, 78 F.4th 1100, 1104 (9th Cir. 2023). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). To give fair notice of the claims and the grounds on which they rest, a plaintiff

must allege with at least some degree of particularity overt acts by specific defendants which support the claims. *See Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996). A formulaic recitation of the elements of a cause of action does not suffice to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Upon dismissal of any claims, the court must tell a pro se plaintiff of a pleading's deficiencies and provide an opportunity to cure such defects. *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016). However, if amendment would be futile, leave to amend does not need to be provided. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023).

To determine the propriety of a dismissal motion, the court may not consider facts raised outside the complaint (such as in an opposition brief), but it may consider such facts when deciding whether to grant leave to amend. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**B. Failure to State a Claim under Rule 12(b)(6)**

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering whether a claim has been stated, the court must accept the well-pleaded factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Id.* However, the court is not required to accept as true conclusory factual allegations contradicted by documents referenced in the complaint, or legal conclusions merely because they are cast in the form of factual allegations. *Paulsen v. CNF Inc.*, 559

F.3d 1061, 1071 (9th Cir. 2009).

## III. DISCUSSION

Plaintiffs assert three causes of action in the TAC pursuant to 42 U.S.C. § 1983: (1) First Amendment retaliation, by Plaintiffs Rogers and Romero against Defendants Belongia and Swanstrom in their individual capacities; (2) Fourth Amendment unreasonable search and seizure, by Plaintiff Nanez against Defendants Miller and Swanstrom in their individual capacities; and (3) violation of the Equal Protection Clause of the Fourteenth Amendment, by Plaintiff Nanez against Defendants Swanstrom and Miller. TAC ¶¶ 71-103. Defendants move to dismiss the TAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs. Mot. (ECF No. 73-1). Defendants also move to dismiss the TAC's request for punitive damages. *See id.* at 10.

To state a claim under Section 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See Lindke v. Freed*, 601 U.S. 187, 194 (2024); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980). That is, "an official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018); *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).

Before proceeding to the merits of Defendants' motion to dismiss, the Court first addresses the timeliness of Plaintiffs' opposition.

**A. Plaintiffs' Late Opposition**

Defendants' motion to dismiss the TAC was filed on June 15, 2026, making Plaintiffs' opposition due on June 29, 2026. *See* ECF No. 73; E.D. Cal. L.R. 230(c). The Court notes that Plaintiff Rogers is registered to receive e-service of filings such that Plaintiff Rogers receives filings electronically through CM/ECF simultaneous with their filing. (*See* ECF No. 28.) Despite this, Plaintiffs filed their opposition to Defendants' motion on July 6, 2026. *See* Pls. Opp'n. Defendants argue in their reply that because Plaintiffs' opposition is untimely, their motion should be deemed unopposed and granted. Defs. Reply at 1. Plaintiffs filed a sur-reply addressing Defendants' timeliness argument. (ECF No. 79.)

In light of Plaintiffs' pro se status and Defendants' response to their opposition, the Court will consider Plaintiffs' late opposition in its review of Defendants' motion to dismiss. Plaintiffs are warned that they must meet court deadlines for their filings, and if they continue to submit their filings late, sanctions could issue. The Court next turns to each of Plaintiffs' claims in the TAC.

**B. First Amendment Retaliation Claim**

"To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) (citation modified). "Ordinarily, the adverse retaliatory actions complained of by plaintiffs are exercises of governmental power that are regulatory, proscriptive, or compulsory in nature and have the effect of punishing someone for his or her speech." *Id.* (citation modified). "A plaintiff who fails to allege a chilling effect may still state a claim if he

alleges he suffered some other harm that is more than minimal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation modified). "Importantly, the test for determining whether the alleged retaliatory conduct chills free speech is objective; it asks whether the retaliatory acts would lead ordinary [persons] in the plaintiffs' position to refrain from protected speech." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016) (citation modified).

In the TAC, Plaintiffs allege separate instances of retaliation by Defendants Belongia and Swanstrom. The Court considers Plaintiffs' First Amendment claims as to each defendant.

1. First Amendment Claim Against Defendant Belongia

Plaintiffs Romero and Rogers assert a First Amendment retaliation claim against Defendant Belongia based on their exchange on March 26, 2024, in which Defendant Belongia stated that if they continued to question him about the suspensions of S.N. and T.R., S.N. would be "stripped of 'all sports and her Student Body President position.'" TAC ¶¶ 21, 73-75. Defendants do not dispute whether Plaintiffs have adequately alleged they engaged in protected activity. *See* Defs. Mot. at 6; TAC ¶ 72. Upon review of the TAC, the Court concludes that Plaintiffs have plausibly alleged protected activity based on their March 26, 2024 meeting with Defendant Belongia challenging the suspensions of S.N. and T.R. *See* TAC ¶ 72. The Court further finds Plaintiffs allege that Defendant Belongia engaged in adverse action by threatening to remove Plaintiffs' children from extracurricular activities such as sports and student government and that Defendant Belongia's statement was directly related to Plaintiffs' conduct of continuing to challenge S.N.'s and T.R.'s suspensions. *See id.* ¶¶ 21, 72. Accordingly, the TAC plausibly states a claim for First Amendment retaliation against Defendant Belongia. The Court addresses Defendants' arguments for dismissal in turn.

First, Defendants argue that Plaintiffs' retaliation claim fails because they have not alleged adverse action against Plaintiffs Rogers and Romero based on Belongia's purported threat concerning S.N. only, as any resulting harm would be limited to

Plaintiffs' children, and Plaintiffs "cannot assert claims on their own behalf for violation of their children's civil rights." Defs. Mot. at 7-8. This argument fails because Plaintiffs allege they would be harmed by the effect of punishment on their children. As other district courts have reasoned, "a parent's constitutional right to criticize school officials would collapse if [Defendants'] argument were taken to its logical end point. School officials could immunize themselves from any criticism by swiftly punishing any student who is the child of a critical parent." *Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp. 2d 1120, 1128-29 (D. Or. 2003); *see also Pearson v. Cent. Curry Sch. Dist. No. 1*, 2015 WL 5665457, at *3 (D. Or. Sept. 22, 2015). Defendants' supporting cases are distinguishable because they did not involve direct threats to a parent of what would happen to their child at school if the parent persisted in protected activity. *See Davis v. Folsom Cordova Unified Sch. Dist.*, 2015 WL 6821278, at *3 (E.D. Cal. Nov. 6, 2015); *Jones v. Beverly Hills Unified Sch. Dist.*, 2010 WL 1222016, at *4 (C.D. Cal. Mar. 24, 2010), *report and recommendation adopted*, 2010 WL 1222023 (C.D. Cal. Mar. 25, 2010). Here, the TAC alleges that Defendant Belongia indicated he would punish S.N. *if* Plaintiffs continued to question him. TAC ¶ 21. Thus, because Plaintiffs allege Defendant Belongia made a threat to Plaintiff Rogers's child as a direct response to Plaintiffs' conduct, the TAC plausibly establishes that Defendant Belongia subjected Plaintiffs to an adverse action.

Second, Defendants argue that Plaintiffs Rogers's and Romero's speech was not actually chilled by Defendant Belongia's statement. *See* Defs. Mot. at 7. However, in some circumstances, "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis in original). Thus, Plaintiffs need not have alleged that their speech was in fact chilled.

Third, on reply, Defendants argue that even if Defendant Belongia made a threat to Plaintiffs Rogers and Romero by warning he would remove S.N. from extracurricular activity if Plaintiffs continued to challenge S.N.'s and T.R.'s suspension, such a threat is

insufficient to chill a person of ordinary firmness from continuing to engage in protected activity. *See* Defs. Reply at 2-3. Defendants argue this kind of threat does not reach the level of a threat such as the loss of custody of one's children. *See id.* at 2.

This argument also fails. "Whether a threat can support a First Amendment retaliation claim depends on the individual circumstances of the case." *Doe v. Pasadena Unified Sch. Dist.*, 810 F. App'x 500, 503 (9th Cir. 2020). The Ninth Circuit has not yet determined whether a parent has a right to be free from a school official's threats to the parent's child. *See id.* (declining to decide whether First Amendment was implicated where parent did not enjoy a clearly established right to be free from a school official's threats). Nonetheless, as to students themselves, where a school official "limit[s] [a student's] involvement in student groups and student government," then "it is entirely plausible that a jury could find these actions reasonably likely to deter an ordinary person from engaging in protected speech and conduct." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016) (citation modified). In light of the uncertainty of Ninth Circuit law on this point, the issue of whether an ordinary person is likely to be deterred from engaging in protected speech based on a school official's threat to limit the extracurricular activities of that person's child "is a question of fact not properly resolved on a motion to dismiss." *Nassiri v. Colvin*, 2015 WL 5098470, at *13 (S.D. Cal. Aug. 31, 2015); *see also Richardson v. City of Gladstone*, 2015 WL 569914, at *13 (D. Or. Feb. 10, 2015) (holding defendants' argument that alleged conduct would not chill a person of ordinary firmness cannot be resolved on motion to dismiss); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (holding that whether "an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law . . . unless the claimed retaliatory action is truly 'inconsequential'"). Similarly, whether an ordinary person in Plaintiff Romero's circumstances is likely to be deterred from engaging in protected speech based on an implied threat to his child's extracurricular activities cannot be resolved on a motion to dismiss.

Accordingly, because Plaintiffs have plausibly alleged that they engaged in

protected activity, that Belongia engaged in adverse action against Plaintiffs by threatening or impliedly threatening action against their children at school, and that Belongia's threat was directly connected to their protected activity, Defendants' motion to dismiss should be denied in part as to Plaintiffs' First Amendment claim against Belongia. *See O'Brien*, 818 F.3d at 933-34.

2. <u>First Amendment Claim Against Defendant Swanstrom</u>

Plaintiffs Rogers and Romero assert a First Amendment retaliation claim against Defendant Swanstrom based on the following conduct: (1) her March 26, 2024 statement, "Here come the parents who think their angels can do no wrong"; (2) her showing Plaintiffs Romero and Rogers the restroom surveillance video related to the March 25, 2024 incident and declaring the FlySense alert and video sufficient for summary suspension; (3) her suggesting a perfume demonstration and failing to appear for the test; (4) her receipt of formal complaints challenging FlySense enforcement and Defendant Belongia's allegedly retaliatory conduct; (5) her denial of Plaintiff Rogers's January 24, 2025 UCP complaint alleging a teacher's inappropriate conduct due to his failure to meet with the accused teacher; and (6) her participation in the February 12, 2025 incident when she ordered Plaintiff Nanez and other students to empty their pockets after a FlySense device alerted in the Hayfork High School restroom. TAC ¶¶ 47, 50, 52, 76-78.

The Court incorporates the legal standards set forth above and finds that Plaintiffs have not stated a plausible First Amendment retaliation claim against Defendant Swanstrom. As to the second element of a First Amendment retaliation claim, although Plaintiffs assert a bevy of "retaliatory" actions, none of the alleged actions bear sufficient resemblance to "exercises of governmental power that are regulatory, proscriptive, or compulsory in nature and have the effect of punishing someone for his or her speech." *Mulligan*, 835 F.3d at 988.[4]

---

[4] The Courts also notes Plaintiffs' allegation that Defendant Swanstrom previously initiated a Child Protective Services referral against Plaintiff Romero is irrelevant where

Nor do Plaintiffs adequately allege the third element of a First Amendment retaliation claim, i.e., that “there was a nexus between the defendant's actions and an intent to chill speech.” *Arizona Students' Ass'n*, 824 F.3d at 867. No such nexus is apparent here. Instead, the TAC alleges disconnected events—such as Defendant Swanstrom’s receipt formal complaints about MVUSD’s use of FlySense and Defendant Belongia’s conduct, her review of an unrelated complaint about another teacher, and her involvement in the February 12, 2025 incident with Plaintiff Nanez—and conjectures that they establish a retaliatory motive because of her history of dealing with Plaintiffs. *See* TAC ¶¶ 38-39, 40-45, 47, 51-52, 77, 80. Plaintiffs also allege that because Defendant Swanstrom is personally involved in overseeing MVUSD’s FlySense alert system, she has a retaliatory motive against Plaintiffs for challenging MVUSD’s use of FlySense. *Id.* ¶ 79. But, as Defendants point out, Defendant Swanstrom’s alleged animus is contravened by the TAC’s admission that, during the March 26, 2024 meeting, she endorsed a perfume test of the FlySense device that exposed a false positive and led directly to the reversal of S.N.’s and T.R.’s suspensions. *See* TAC ¶¶ 26-27, 29; *see also* Defs. Mot. at 7.

Accordingly, because Plaintiffs have not plausibly alleged that Defendant Swanstrom subjected Plaintiffs Rogers and Romero to adverse action because of their protected activity, Plaintiffs’ First Amendment retaliation claim against Defendant Swanstrom is subject to dismissal.

**C. Fourth Amendment Claim**

Plaintiff Nanez asserts a claim against Defendants Miller and Swanstrom for unreasonable search and seizure in violation of the Fourth Amendment arising out of the February 12, 2025 incident. TAC ¶¶ 84-93. The TAC alleges that Plaintiff Nanez and another boy “each jumped up and slapped the FlySense device” in the school restroom and that the device subsequently alerted. TAC ¶¶ 54, 86. After this occurred, Defendants

---

Plaintiffs have not alleged an actual adverse action during the period of events in the TAC. *See* TAC ¶ 81.

Swanstrom and Miller confronted the boys outside the restroom, directed them to a conference room, and told all seven students, including Plaintiff Nanez, to empty their pockets, which Plaintiff Nanez did. *Id.* ¶¶ 55-57, 60, 63, 87, 88.

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. This guarantee is applied to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). "[T]he Fourth Amendment applies to searches conducted by school authorities . . ." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). "The legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 341 (citation modified). "Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42 (citation modified). That is, there must be "a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009). "Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342 (citation modified). The Supreme Court's reasonableness standard for school searches has been extended by the Ninth Circuit to seizures of students by school officials. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1023 (9th Cir. 2014).

Here, Plaintiff Nanez fails to state a Fourth Amendment claim for unreasonable search and seizure against Defendants Miller and Swanstrom. As to the first prong of analysis under *T.L.O.*, even assuming that Defendants Miller and Swanstrom's alleged

conduct constituted a seizure and search, Defendants had reasonable grounds for suspecting a search would turn up evidence of wrongdoing based on Plaintiff Nanez's own concession that he had "slapped" the FlySense device before it alerted. *Id.* ¶¶ 54, 86.

Plaintiffs raise two arguments in opposition, both of which fail. First, Plaintiffs contend that "device contact might justify investigating horseplay" but not a search for vaping devices on the students who were in the restroom when the FlySense device alerted. *See* Pls. Opp'n at 4. This argument is not persuasive because Defendants Miller and Swanstrom could reasonably have concluded that Plaintiff Nanez's motive for hitting a vaping-detection device was to conceal evidence of vaping. Second, Plaintiffs contend that Defendants Miller and Swanstrom lacked individualized suspicion as to Plaintiff Nanez because the FlySense device can alert only as to an entire room, not to a particular student. Pls. Opp'n at 4. This argument also fails because neither the Supreme Court nor the Ninth Circuit have held that school students are entitled to individualized suspicion before they can be searched. *See Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 829 (2002) ("The Fourth Amendment imposes no irreducible requirement of individualized suspicion.") (citation modified); *see also Smith v. McGlothlin*, 119 F.3d 786, 788 (9th Cir. 1997) ("[I]t is fairly clear that Smith was not in fact entitled to individualized suspicion before she could be searched."). Rather, even without individualized suspicion, "a suspicionless search may be reasonable in limited circumstances, where [1] the privacy interests implicated by the search are minimal, and [2] where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1267 (9th Cir. 1999) (citation modified). Here, the allegations that the FlySense device alerted within the restroom, that Plaintiff Nanez was in the restroom and had "slapped" the device prior to its alerting, that Plaintiff Nanez was observed existing the restroom immediately after the device alerted, and that Plaintiff Nanez and six other students in the restroom at the time were told only to empty

their pockets, fail to establish that the search and seizure was unreasonable under the circumstances. *See* TAC ¶¶ 54-57, 86, 87, 92.

As to the second reasonableness prong under *T.L.O.*, the search and seizure were minimally intrusive where Plaintiff Nanez was moved to a "conference room" and the search was limited to Plaintiff Nanez's emptying his own pockets on command from Defendants Miller and Swanstrom. *See* TAC ¶¶ 55-56, 86-87; *Safford*, 557 U.S. 364 at 374 (noting that if assistant principal's "reasonable suspicion of pill distribution were not understood to support searches of outer clothes and backpack, it would not justify any search worth making").

Although Plaintiffs claim that whether the search was justified at its inception or appropriate in scope are "disputed facts," *see* Pls. Opp'n at 4, courts have dismissed Fourth Amendment claims where, as here, it is clear the plaintiff fails to allege the defendants acted unreasonably. *See McGuire v. Roseville Joint Union High Sch. Dist.*, 2023 WL 3854005, at *7 (E.D. Cal. June 6, 2023) ("In the absence of allegations that defendants acted unreasonably, the first amended complaint fails to state a claim under the Fourth Amendment."), *report and recommendation adopted*, 2023 WL 5021561 (E.D. Cal. Aug. 7, 2023), *aff'd*, 2026 WL 36171 (9th Cir. Jan. 6, 2026). Accordingly, the TAC fails to state a Fourth Amendment claim against Defendants Miller and Swanstrom.

**D. Equal Protection Claim**

Plaintiff Nanez asserts an equal protection claim based on the February 12, 2025 incident against Defendants Swanstrom and Miller. TAC ¶¶ 94-103. The TAC alleges that, over the course of the February 12, 2025 incident, Defendants selectively enforced the school's policies against Plaintiff Nanez due to his being Native American and Hispanic/Latino. *See id.* ¶ 101. The TAC raises a number of "contextual facts" that, according to Plaintiffs, demonstrate the differential treatment of similarly situated students: (1) Defendant Belongia's statement that "the white girls" would not be investigated following the March 25, 2024 incident; (2) Plaintiff Nanez's unspecified personal observations of inconsistent responses to FlySense alerts and treatment of

Native American and Latino/a students; and (3) a FlySense alert incident at a volleyball camp S.N. attended, where an "older student" was seen vaping by S.N. but not disciplined. *See id.* ¶¶ 19, 32-33, 66-68, 98-99.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation modified). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)). Under a selective-enforcement theory of discrimination, "a plaintiff must demonstrate that [1] enforcement had a discriminatory effect and [2] the [government was] motivated by a discriminatory purpose." *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007). To show a discriminatory effect, "[t]he plaintiff must identify a similarly situated class against which the court can compare the plaintiff's class." *Vang v. Lopey*, 2017 WL 3868417, at *2 (E.D. Cal. Sept. 5, 2017) (citation modified).

Here, the TAC fails to state a claim for selective enforcement of MVUSD's vaping detection policies. Under the first element, Plaintiffs have not established a reasonable inference of discriminatory effect where the TAC fails to allege the differential treatment of a similarly situated class for several reasons. First, the circumstances of the March 25, 2024 and volleyball camp incidents do not involve similarly situated students because they allege different contexts than in Plaintiff Nanez's case, who intentionally struck a FlySense device in a high school bathroom during school hours, and because the TAC does not allege the races of the students whom Defendants allegedly treated differently. Thus, the Court cannot tell whether those events involved students that are similarly situated apart from Plaintiff Nanez's protected class. Second, Plaintiffs allege that, for the February 12, 2025 incident, all seven boys in the school restroom were ordered to

empty their pockets, but Plaintiffs apparently deny that all seven boys were searched because of race alone, so it is unclear whether Plaintiff Nanez was treated differently than the other boys due solely to his race. *See* TAC ¶¶ 56, 63, 101. Third, Plaintiff Nanez's other alleged observations about inconsistent responses to FlySense alerts and Defendants' treatment of Native American and Latino/a students are conclusory. Thus, because the TAC has not alleged the existence of students who were similarly situated as Plaintiff Nanez apart from their race, Plaintiff Nanez has not stated a selective-enforcement claim against Defendants Swanstrom and Miller. *See Vang*, 2017 WL 3868417, at *2 (dismissing selective-enforcement claim where plaintiffs' allegations about enforcement of marijuana ordinances "show the County enforced the ordinance against non-Asian individuals by issuing nuisance violations to six non-Asian individuals" and "Plaintiffs fail to indicate how or whether these other individuals were 'similarly situated' to Plaintiffs"); *Stannard v. State Ctr. Cmty. Coll. Dist.*, 2025 WL 2808435, at *20 (E.D. Cal. Oct. 2, 2025) ("[B]ecause Richardson has not alleged the existence of a 'similarly situated' comparator, he fails to plausibly allege the existence of any 'discriminatory effect.'") (quoting *Rosenbaum*, 484 F.3d at 1154).

As to the second element, the TAC fails to present any non-conclusory allegations of Defendants Swanstrom and Miller's discriminatory intent. *See* TAC ¶¶ 20, 65, 70, 101. For this additional reason, Plaintiffs fail to state a plausible selective-enforcement claim. *See Vang*, 2017 WL 3868417, at *3 (dismissing selective-enforcement claim based on "conclusory assertions of intent without facts showing actual subjective intent").

Plaintiffs respond in opposition that discovery is necessary to obtain Defendants' "comparator records," which according to Plaintiffs will provide evidence of selective enforcement. Pls. Opp'n at 5. The TAC similarly relies on the alleged fact that "MVUSD controls the relevant comparator records" as direct support for Plaintiffs' selective-enforcement claim. TAC ¶¶ 68, 70, 98-99. Plaintiffs' argument fails because Plaintiffs may not work backwards from anticipated discovery to assert they have made plausible allegations that state a claim. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177

(9th Cir. 2021) ("Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery."). Accordingly, because the TAC's allegations of selective enforcement against Plaintiff Nanez are speculative or conclusory, Plaintiff Nanez's Equal Protection claim is subject to dismissal.

**E. Punitive Damages**

Defendants also argue that Plaintiff fails to allege facts to support punitive damages. Defs. Mot. at 10. However, "[a] Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim." *Elias v. Navasartian*, 2017 WL 1013122, at *4 (E.D. Cal. Feb. 17, 2017) (collecting cases and denying Rule 12(b)(6) motion to dismiss plaintiff's request for punitive damages as to Section 1983 claims), *report and recommendation adopted*, 2017 WL 977793 (E.D. Cal. Mar. 13, 2017). Thus, the Court denies Defendants' motion to the extent Defendants seek to dismiss Plaintiffs' request for punitive damages.

**F. Leave to Amend**

If the court finds that a complaint should be dismissed for failure to state a claim, it has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. *Id.* at 1130-31; *see also Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citation modified). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. *Cato*, 70 F.3d at 1105-06. When a plaintiff has previously amended the complaint, a district court's discretion to deny leave to amend is "particularly broad." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

Here, as to Plaintiffs' first cause of action against Defendant Swanstrom for First Amendment retaliation, second cause of action for unreasonable search and seizure, and third cause of action for violation of the Equal Protection Clause, the Court finds that amendment would be futile because Plaintiffs do not state a claim upon which relief can be granted as outlined above. Further, Plaintiffs were previously granted an opportunity to amend their Second Amended Complaint, and the Court provided a detailed explanation of the deficiencies in their complaint. *See* 4/3/2026 Order and F&Rs. Despite this, Plaintiffs were unable to allege sufficient facts to state the aforementioned claims against Defendants Belongia, Swanstrom, or Miller. The Court also notes that Plaintiffs have already filed several separate complaints, including some that were previously stricken, and the Third Amended Complaint is their eighth complaint. The Court concludes that amendment would be futile, and therefore, leave to amend should not be provided as to Plaintiffs' first cause of action against Defendant Swanstrom, second cause of action, and third cause of action. *See Lathus*, 56 F.4th at 1243.

**IV. CONCLUSION**

Based upon the findings above, it is RECOMMENDED:

1. Defendants Claude Belongia, Anmarie Swanstrom, and Mike Miller's motion to dismiss (ECF No. 73) be GRANTED IN PART and DENIED IN PART as follows:
    a. Plaintiffs' first cause of action as to Defendant Swanstrom (First Amendment retaliation) is DISMISSED without leave to amend;
    b. Plaintiffs' second cause of action (Fourth Amendment unreasonable search and seizure) is DISMISSED without leave to amend;
    c. Plaintiffs' third cause of action (Equal Protection discrimination) is DISMISSED without leave to amend;
    d. Defendants' motion to dismiss Plaintiffs' first cause of action as to Defendant Belongia (First Amendment retaliation) is DENIED; and
    e. Defendants' motion to dismiss Plaintiffs' request for punitive

damages pursuant to Section 1983 is DENIED.

2. Plaintiffs be permitted to proceed under the TAC only with respect to Plaintiffs Rogers and Romero's first cause of action as to Defendant Belongia (First Amendment retaliation).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 17, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, roge.2587.24